# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUINITY COMMISSION,<br><br>  Plaintiff,<br><br>v.<br><br>BAY CLUB FAIRBANKS RANCH, LLC d/b/a FAIRBANKS RANCH COUNTRY CLUB, INC.,<br><br>  Defendants. | Case No.: 18-cv-1853 W (BLM)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL [DOC. 40]** |

Pending before the Court is Plaintiff U.S. Equal Employment Opportunity Commission's ("EEOC") motion to disqualify one of Defendant Bay Club Fairbanks Ranch, LLC d/b/a Fairbanks Ranch Country Club's ("Bay Club") attorneys. Bay Club opposes. The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d.1). For the following reasons, the Court **GRANTS** the motion [Doc. 40].

1

## I. INTRODUCTION

Defendant Bay Club is represented in this lawsuit by attorneys from Buchalter APC, and attorney Mark Koorenny of the Koorenny Law Group. Koorenny has served as Bay Club's general counsel since 2009. (*Koorenny Decl.* [Doc. 49-2] ¶ 2.)

In its motion, Plaintiff EEOC seeks to disqualify Koorenny under California Rule of Professional Conduct 3.7(a), which restricts an attorney's ability to act as an advocate in a case where the attorney will also be a witness. (*P&A* [Doc. 40-1] 1:7–9.) Bay Club opposes the motion on the basis that (1) the EEOC unreasonably delayed in filing the motion, (2) Bay Club will suffer substantial prejudice, (3) it is unclear whether Koorenny will testify at trial, and (4) it has consented to Koorenny's dual role as attorney and witness. For the reasons that follow, the Court will grant the EEOC's motion.

## II. LEGAL STANDARD

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'" Kennedy v. Eldridge, 201 Cal.App.4th 1197, 1204 (2011) (alterations in original). "[D]isqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility." Id. "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." Id. "The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." Id.

## III. ANALYSIS

The EEOC moves to disqualify Koorenny under California Rule of Professional Conduct 3.7(a), which provides:

2

> A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless: (1) The lawyer's testimony relates to an uncontested issue or matter; (2) The lawyer's testimony relates to the nature and value of legal services rendered in the case; or (3) The lawyer has obtained informed written consent from the client . . . .

Although the rule allows continued representation where the client consents to the attorney's dual role, a trial court has discretion to disqualify counsel. Lyle v. Superior Court, 122 Cal. App. 3d 470, 482 (1981). However, "in exercising that discretion, the court must weigh the competing interests of the parties against potential adverse effects on the integrity of the proceeding before it and 'should resolve the close case in favor of the client's right to representation by an attorney of his or her choice . . . .'" Smith, Smith & Kring v. Superior Court, 60 Cal.App.4th 573, 580 (1997) (quoting Lyle, 122 Cal.App.3d at 482).

In Smith, 60 Cal.App.4th 573, the California Court of Appeal explained that in evaluating a motion to disqualify under Rule 3.7(a), courts should consider three factors. First, "the combined effects of the strong interest parties have in representation by counsel of their choice, and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case." Smith, 60 Cal.App.4th at 581. "[I]t must be kept in mind that disqualification usually imposes a substantial hardship on the disqualified attorney's innocent client, who must bear the monetary and other costs of finding a replacement." Id. (quoting Gregori v. Bank of America, 207 Cal.App.3d 291, 300 (1989)).

Second, "'whenever an adversary declares his intent to call opposing counsel as a witness, prior to ordering disqualification of counsel, the court should determine whether counsel's testimony is, in fact, genuinely needed.'" Smith, 60 Cal.App.3d at 581 (quoting Reynolds v. Superior Court, 177 Cal.App.3d 1021, 1027 (1976) (citation omitted)). "In determining the necessity of counsel's testimony, the court should consider 'the significance of the matters to which he might testify, the weight his testimony might have in resolving such matters, and the availability of other witnesses or documentary

3

evidence by which these matters may be independently established.'" Id. (quoting Comden v. Superior Court, 20 Cal.3d 906, 913 (1978)).

Third, courts should consider the possibility the moving party is using the motion to disqualify for purely tactical reasons. Smith, at 581 (quoting Comden v. Superior Court, 20 Cal.3d at 915). This consideration is important because if counsel was "able to disqualify opposing counsel simply by calling them as witnesses, it would 'pose the very threat to the integrity of the judicial process that [motions to disqualify] purport to prevent." Id. (citation omitted).

Here, the record does not support a finding that Bay Club would suffer the "usual" hardship imposed on clients by disqualification. To begin, there is no evidence indicating that Koorenny's disqualification would result in the duplication of litigation expenses or effort. While Bay Club relies on Koorenny's "decade long" role as its lawyer "who is familiar with its employment practices, procedures, investigations, employees, litigation as well as resolutions of cases" (*Opp'n* [Doc. 49] 10:12–15), Bay Club provides no information regarding the extent to which Koorenny has been involved in this lawsuit. Although Koorenny is listed as "co-counsel" on Bay Club's filings, all of its pleadings and briefs, as well as joint motions with the EEOC, have been signed by Buchalter attorneys, and all of Bay Club's filings are on Buchalter pleading paper. (*See e.g. Notice of MTD.* [Doc. 7]; *P&A* [Doc. 7-1]; *Corp. Disclosure State.* [Doc. 8]; *Reply to MTD* [Doc. 10]; *Answer* [Doc. 16]; *Notice of Related Case* [Doc. 28]; *Opp'n to Mot. to Compel* [Doc. 47]; *Notice of Mot. to Compel* [Doc. 56-1], *Mot. to Compel* [Doc. 56]; *Opp'n to Mot. to Disqualify* [Doc. 49]; *Jt. Mot. Re. ENE* [Doc. 26]; *Jt. Stip. Re. Protective Order* [Doc. 53]; *Jt. Disc. Plan* [Doc. 29].) Similarly, Buchalter attorneys prepared all declarations concerning discovery issues, appeared in discovery proceedings before Magistrate Judge Schopler, and are involved in the communications with the EEOC and co-defendant Fairbanks Ranch Country Club, Inc. ("FRCCI") regarding this litigation. (*See e.g. Crosby Reply Decl.* [Doc. 52-1], *Ex. A* [Doc. 52-1] p. 1, *Ex. B* [Doc. 52-1] p. 1,

4

*Ex. C.* [Doc. 52-1] *Ex. D.* [Doc. 52-1]; *Boulton Reply Decl.* [Doc. 52-3], *Ex. A* [Doc. 52-3], *Ex. B* [Doc. 52-3].)

In contrast, the only document signed by Koorenny is his declaration filed in support of Buchalter's opposition to the present motion. In that declaration, Koorenny simply repeats that he has served as Bay Club's general counsel since 2009, well before the lawsuit was filed. (*Koorenny Decl.* ¶ 2.) Nowhere does Koorenny provide any indication regarding the amount of work or type of work he has performed in this litigation. (*See Id.*) Also significant is Koorenny's appearance at the Early Neutral Evaluation ("ENE") conference as the client representative, not litigation counsel.

In short, the current record strongly suggests Koorenny has had an extremely limited role as an attorney in this litigation and, therefore, Bay Club would not incur the duplicative costs and time-consuming effort that clients usually incur when counsel is disqualified. Additionally, as the EEOC points out, because Koorenny is being disqualified under the attorney-witness rule, he may continue to consult with the Buchalter attorneys and Bay Club regarding the litigation, further ameliorating any potential harm to Bay Club. Accordingly, the Court finds Bay Club would not suffer significant hardship if Koorenny is disqualified.

The record also supports a finding that Koorenny's testimony is needed. Bay Club acknowledges that during the ENE, Koorenny "represented to the Court and counsel for all parties that . . . he would likely be a witness in this case." (*Opp'n* 4:22–24; *Warren Decl.* ¶ 4.) In his declaration, Koorenny admits his "involvement as investigator," during which he met with Shant Karian, the alleged harasser. (*Id.* ¶ 8.) In correspondence with the EEOC before the lawsuit was filed, Koorenny also represented that he talked to other staff regarding Claimant's allegations. (*Crosy Decl.* ¶ 6, *Ex. C* [Doc. 40-3] p. 2.) Koorenny also admits he is familiar with Bay Club's personnel, policies and procedures (*Koorenny Decl.* ¶ 2), which are also potentially relevant. See Star v. West, 227 F.3d 1036 (9th Cir. 2001) ("Once an employer knows or should of [coworker] harassment, a remedial obligation kicks in. [Citation omitted.]"); Hardage v. CBS Broadcasting, Inc.,

427 F.3d 1177 (9th Cir. 2005) (explaining relevance of an employer's adoption of anti-harassment 'policy and its efforts to disseminate the policy to its employees….' [Citation omitted.]"). Based on these facts, the Court is satisfied that Koorenny's testimony is necessary in this case.

The next consideration is whether there is any indication the EEOC filed the motion to disqualify as a litigation tactic. As an initial matter, the above findings—Koorenny's limited role in this lawsuit and the need for his testimony—suggests that the EEOC's motion is based on legitimate concerns and is not a litigation tactic. Bay Club, however, argues the EEOC's "unreasonable" delay in filing the motion is proof that it is a litigation tactic. In support of this argument, Bay Club relies on River West, Inc. v. Nickel, 188 Cal.App.3d 1297 (1987). (*Opp'n* [Doc. 49] 10:8–10.)

But the delay and prejudice present in River West was significantly greater than exists here. In River West the defendant waited 47 months from the filing of the lawsuit to seek disqualification. By then, plaintiff's attorney had spent 3000 hours in the case and plaintiff had incurred $387,000 in legal fees. In contrast, here, the EEOC "delayed" 12 months from the filing of the complaint.[1] And as discussed above, the record demonstrates Koorenny has spent a limited amount of time litigating this case. Additionally, unlike River West, Bay Club is represented by another law firm that is not the subject of the disqualification motion and that firm appears to have taken the leading ore in this case.

---

[1] The Court rejects Bay Club's contention that the EEOC delayed two and a half years. Bay Club's argument is based on the date the EEOC first communicated with Koorenny regarding the Charge of Discrimination, December 5, 2016. (*Opp'n* 9:22–24.) But this lawsuit was not filed until August 2018. (*Compl.* [Doc. 1].) Until the lawsuit was filed, the EEOC could not file a motion to disqualify. Moreover, the ENE took place on May 16, 2019. (*Minute Entry* [Doc. 30].) The EEOC's motion was filed less than three months after the ENE. See Liberty National Enterprises, L.P. v. Chicago Title Ins. Co., 194 Cal.App.4th 839, 846 (2011) (The stage of the litigation is a consideration in evaluating reasonableness of delay).

6

Bay Club also asserts the motion may not yet be ripe because "there is no trial at issue, no testimony at trial by Koorenny or any risk of confusing a jury." (*Opp'n* 13:6–7.) In other words, Bay Club seems to be suggesting that Koorenny's disqualification can be delayed until the parties are closer to trial. The Court is not persuaded for at least two reasons. First, delaying Koorenny's disqualification would potentially increase the amount of harm Bay Club would suffer to the extent Koorenny would become active in the case. This argument is also at odds with Bay Club's early argument that the EEOC waited too long to file the motion. (*Opp'n*10:8–10.)

Second, the Court is concerned that Koorenny's different roles in this case, and confusion concerning which role he is in at any point in the litigation, adversely effects the integrity of these proceedings. For example, while listed as co-counsel on pleadings and identified as a potential witness, Koorenny attended the ENE before Judge Schopler as the client representative. After attending the ENE, Koorenny / Bay Club then disputed—both in the opposition to this motion and apparently in discovery hearings before Judge Schopler—that Koorenny attended the ENE as a client representative. This "confusion" was cleared up by Judge Schopler: "[A]t the ENE, Mr. Koorenny signed in as a party representative, and he represented himself to me as a client representative. It was something that I clarified." (*Crosby Reply Decl.*, *Ex. B* at 23:8–10.*)*

The Court is at a loss as to how Koorenny could "forget" that he attended the ENE as the client representative. This is particularly true given the order scheduling the ENE required the personal appearance of the parties. (*ENE Order* [Doc. 17] ¶ 2.) The incident lends support to the EEOC's contention that Bay Club has been using the confusion regarding Koorenny's true role in this case as a litigation tactic, particularly during discovery. Regardless, the Court agrees that Koorenny's continued roles as counsel, client representative and witness create the appearance of impropriety and threaten the integrity of these proceedings.

## IV. CONCLUSION & ORDER

For the reasons set forth above, the Court **GRANTS** the EEOC's motion to disqualify Koorenny [Doc. 40].

**IT IS SO ORDERED.**

Dated: November 6, 2019

Hon. Thomas J. Whelan
United States District Judge