UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BAY CLUB FAIRBANKS RANCH, LLC d/b/a FAIRBANKS RANCH COUNTRY CLUB; FAIRBANKS RANCH COUNTRY CLUB, INC.,<br><br>Defendants. | Case No.: 3:18-CV-1853 W (AGS)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISQUALIFY COUNSEL [DOC. 66]** |

Pending before the Court is Defendant Bay Club Fairbanks Ranch, LLC d/b/a Fairbanks Ranch Country Club, Inc.'s ("Bay Club") motion to disqualify one of Plaintiff U.S. Equal Employment Opportunity Commission's ("EEOC") attorneys, Connie Liem. Plaintiff opposes. The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d.1). For the following reasons, the Court **DENIES** the motion [Doc. 66].

//
//
//

1

## I. INTRODUCTION

Plaintiff EEOC is represented in this lawsuit by, among others, attorney Connie Liem.  In its motion, Defendant Bay Club seeks to disqualify Liem for impermissibly reviewing attorney-client privileged text messages.  Bay Club's motion is based on Southern District of California Civil Local Rule 83.4(b), which requires "[e]very member of the bar of this court and any attorney permitted to practice in this court" to "comply with the standards of professional conduct required of members of the State Bar of California, which are . . . adopted as standards of professional conduct of this court." (*P&A* [Doc. 66-1] 7:14–9.)  The EEOC opposes the motion on the basis that: (1) the disputed text messages did not appear privileged; (2) the EEOC understood any possible privilege was waived due to Bay Club's continued failure to provide an adequate privilege log; and (3) prompt remedial action rectified any prejudice or injury. (*Opp'n* [Doc. 72] 13:14–16; 17:27–28; 16:19–21.)

## II. LEGAL STANDARD

A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." Kennedy v. Eldridge, 201 Cal. App. 4th 1197, 1204 (2011) (alterations in original).  "[D]isqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility." Id.  "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." Id.  Thus, courts "may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety." Gas-A-Tron of Ariz. v. Union Oil Co. of Cal., 534 F.2d 1322, 1324–1325 (9th Cir. 1976) (quoting Richardson v. Hamilton Int'l Corp., 469 F.2d 1382 (3rd Cir. 1972)); see also Model Code of Prof'l Responsibility Canon 9 (Am. Bar Ass'n 1980).

2

1  However, disqualifying counsel is "a drastic measure which courts should hesitate
2  to impose except in circumstances of absolute necessity." <u>Kelly v. Roker</u>, 2012 WL
3  851558 at *2 (N.D. Cal. Mar. 13, 2012). "A court should examine a motion to disqualify
4  counsel carefully 'to ensure that literalism does not deny the parties substantial justice."
5  <u>Gotham City Online, LLC v. Art.com, Inc.</u>, 2014 WL 1025120 at *2 (C.D. Cal. Mar. 13,
6  2014) (citation omitted). "Thus, a court must balance such varied interests as a party's
7  right to chosen counsel, the interest in representing a client, the burden placed on a client
8  to find new counsel, and the possibility that 'tactical abuse underlies the disqualification
9  motion.'" <u>Bona Fide Conglomerate, Inc. v. SourceAmerica</u>, 2016 WL 4361808 at *6
10 (S.D. Cal. Aug. 16, 2016) (citing <u>Gotham</u>, 2014 WL1025120 at *3). Accordingly, the
11 moving party carries a heavy burden and must satisfy a high standard of proof. <u>Id</u>.

### III.  ANALYSIS

Attorneys are held to a "reasonable standard of professional conduct when confidential or privileged materials are inadvertently disclosed." <u>Rico v. Mitsubishi Motors Corp.</u>, 42 Cal. 4th 807, 818 (2007); <u>see also</u> <u>Bona Fide</u>, 2016 WL 4361808 at *10 (same standard applies in circumstances of intentional disclosure). When an attorney "receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged . . . , the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged." <u>State Comp. Ins. Fund v. WPS Inc.</u>, 70 Cal. App. 4th 644, 656 (1999).

**A.  Absent a quick review, the text messages were not obviously privileged.**

"That a person is a lawyer does not, *ipso facto*," make all his communications privileged." <u>United States v. Chen</u>, 99 F.3d 1495, 1501 (9th Cir. 1996). Attorney-client privilege in the corporate setting attaches to communications made (1) by corporate employees (2) concerning "matters within the scope of [their] corporate duties" (3) to

3

corporate counsel "acting as such" (4) at the "direction of corporate superiors" (5) in order "to secure legal advice from counsel." Upjohn Co. v. United States, 449 U.S. 383, 394 (1981).

Documents "obviously appear to be subject to an attorney-client privilege" when their titles indicate confidentiality, or their content clearly discusses privileged material. State Comp. Ins. Fund, 70 Cal. App. 4th at 656; see Rico, 42 Cal. 4th at 820 (holding counsel needed to cease document review once it became apparent the document contained attorney impressions, conclusions, opinions, legal research and/or theories). For example, in State Fund, the documents were obviously privileged because they included the heading: "ATTORNEY-CLIENT COMMUNICATION/ATTORNEY WORK PRODUCT," "DO NOT CIRCULATE OR DUPLICATE." Id., 70 Cal. App. 4th at 648.

Here, Bay Club's argument that Liem should have known the documents were protected by the attorney-client privilege is primarily based on Koorenny's role as its corporate counsel. (P&A [Doc. 66-1] 4:8–10; 5:11–169:16–2511:12–15.) But under the circumstances, it would not have been obvious to Liem without some review that the attorney-client privilege attached to the text messages Gonser produced at her deposition.

As an initial matter, Bay Club does not contend the text messages included an "attorney-client privilege" label similar to the document heading in State Fund, which would have immediately identified the documents as privileged. Additionally, Gonser testified that the text messages were sent to and from her personal phone, which she owned before joining Bay Club. (Nardecchia Decl. [Doc. 72-1] ¶ 4, Ex. 2 [Doc. 72-4] 271:5–13)

More importantly, in granting the EEOC's motion to disqualify Koorenny on November 6, 2019, this Court recognized Koorenny "had an extremely limited role as an attorney in this litigation," and that his testimony was needed as a witness. (Id. 5:10–11; 5:18–19.) Bay Club acknowledged during an ENE conference that Koorenny "represented . . . he would likely be a witness in this case" and Koorenny admitted his "involvement as [an] investigator." (Bay Club's Opp'n to Mot. to Disqualify Koorenny

4

[Doc. 49] 4:16–24; *Koorenny Decl.* [Doc. 49-2] ¶ 14.) And in the current motion, Bay Club does not dispute the EEOC's contention that Koorenny had a significant role as an investigator. (*See Opp'n* [Doc. 72] 2:22–23; *Reply* [Doc. 76].)

Koorenny's role as an investigator and his communications about the investigation are relevant because Bay Club contends it engaged in prompt remedial and corrective action regarding the alleged sexual harassment. (*1/15/20 Hearing Transcript* [Doc. 77] 3:33–16; *1/17/20 Min. Entry* [Doc. 79]; *1/17/20 Hearing Transcript* [Doc. 78] 5:23–6:3, 7:5–13, 7:23–8:1.) Gonser also testified that she communicated with Koorenny regarding Sidney Scott's claims of sexual harassment, and that some of the communications were by text. (*Nardecchia Decl.* [Doc. 72-1] ¶ 4, *Ex. 2* [Doc. 72-4] 217:7–24.) The text messages Gonser produced at her deposition were in response to the EEOC's subpoena requesting those types of communications: "DOCUMENTS, including any letters, notes, text messages, or electronic mail YOU have sent to, or received from, Mark Koorenny that relate to the charge of discrimination filed with the EEOC by Sidney Scott, . . . ." (*Allen Decl.* [Doc. 66-2] *Ex. 1* [Doc. 66-2] at 11 of 91.[1]) Thus, Koorenny's name on the text messages would not have signaled that they were obviously privileged.

Finally, also relevant is that when Gonser's deposition took place, the text messages were not identified on Bay Club's privilege log. (*1/15/20 Hearing Transcript* [Doc. 77] 3:9–12.) Additionally, although the EEOC subpoenaed the documents on September 20, 2019, Bay Club waited until the eve of the deposition to determine whether Gonser had any responsive documents, and waited until the morning of the deposition to meet and confer with the EEOC. (*Lapkewyck Decl.* [Doc. 66-3] ¶ 2; *Allen Decl.* [Doc. 66-2] ¶¶ 7, 8.) As a result, Liem believed that Bay Club's objections were an attempt to delay the deposition of a witness who had sold her house and was moving out

---

[1] Bay Club incorrectly contends the "communications were not demanded in the subpoena . . . ." (*P&A* [Doc. 66-1] 3:19–22, citing *Allen Decl.* [Doc. 66- ] 7, Ex. 1.)

5

of state next day.  (*Nardecchia Decl.* [Doc. 72-1] ¶ 4, *Ex. 2* [Doc. 72-4] 104:22–23; *Allen Decl.* [Doc. 66-2] ¶ 9, *Ex. 4* [Doc. 66-2] 46-48 of 91.)

In summary, although Koorenny was Bay Club's general counsel, his communications with Bay Club's employees regarding the investigation into the sexual harassment allegations are not protected by the attorney-client privilege.  The EEOC's subpoena sought those types of communications.  Under the circumstances, the Court finds it would not have been obvious to Liem at the time of production that the documents were covered by the attorney-client privilege.

### B. Liem refrained from reviewing the text messages further than necessary to discover privilege.

An attorney fails to refrain from reviewing documents further than absolutely necessary to discover privilege when confidentiality becomes apparent, but counsel continues reviewing or using the documents regardless.  See Rico, 42 Cal. 4th at 818.  Additionally, an attorney acts improperly or fails to avoid the appearance of impropriety while reviewing obviously privileged documents when the attorney neglects to undertake reasonable remedial action or seek court guidance.  See United States ex rel. Hartpence v. Kinetic Concepts, Inc., 2013 WL 2278122 at *2 (C.D. Cal. May 20, 2013).

Here, Bay Club has not demonstrated that Liem reviewed the messages further than necessary to discover the potential privilege and that Liem failed to undertake reasonable remedial action.  Gonser produced the messages at the deposition after Bay Club's attorney, Patrick Allen, stated his objections on the record.  (*Allen Decl.* [Doc. 66-2] ¶ 9, *Ex. 4* [Doc. 66-2] 49-50 of 91.)  During a morning break in the deposition, Liem conducted a "quick review" of the messages, and an EEOC intern then took the messages and made copies.  (*Liem Decl.* [Doc. 72-2] ¶ 5; *Allen Decl.* [Doc. 66-2] ¶ 12.)

At some point, Bay Club's counsel stated that Judge Schopler was unavailable to advise the attorneys.  (*Allen Decl.* [Doc. 66-2] ¶ 9, *Ex. 4* [Doc. 66-2] 59 of 91.)  During an afternoon break, Liem made a phone call, returned five to ten minutes later, and then

requested a conference with Allen. (*Id.* ¶ 14.) At the conference's conclusion, Allen and Liem agreed to the following remedial actions: (1) all copies of the messages would be placed in a sealed envelope; (2) the EEOC had not made and did not possess any electronic copies; (3) no later than the close of business on December 3, 2019, Bay Club would advise the EEOC if Bay Club asserted attorney-client privilege over any of the messages; (4) if Bay Club asserted privilege over some messages, it would provide a redacted copy and a privilege log, at which time Liem would destroy the sealed envelope with the unredacted copies; and (5) if all the messages were privileged, Liem would destroy the sealed envelope with the documents inside. (*Allen Decl.* [Doc. 66-2] ¶ 16; *Nardecchia Decl.* [Doc. 72-1] ¶ 4, *Ex. 2* 166:16-168:8.)

On December 3, 2019, Bay Club emailed Liem contending "that all of the communications" were privileged. (*Allen Decl.* [Doc. 66-2] ¶ 17, *Ex 5* [Doc. 66-2] 73 of 91.) Liem responded stating Bay Club still had not shown through a privilege log that all the messages were privileged. (*Id. Ex. 5* [Doc. 66-2] 74 of 91.) On December 9, 2019, EEOC attorney Natalie Nardecchia emailed Bay Club confirming the "communications are maintained in a safe and secure location – so there is no concern of disclosure." (*See Nardecchia Decl.* [Doc 72-7] ¶ 7, *Ex 5* [Doc. 72-7].) Neither the sequestered documents and their contents, nor Liem's personal knowledge were distributed to any person. (*Liem Decl.* [Doc. 72-2] ¶ 5.)

On December 11, 2019, attorney Nardecchia sent Bay Club a letter, which proposed remedial measures including "a joint request for *in camera* review by the Court" of the sequestered text messages. (*Nardecchia Decl.* [Doc 72-7] ¶ 6, *Ex.* 4 [Doc. 72-6] at 5.) On or about January 16, 2020, Judge Shopler conducted an *in camera* review and found the text messages were not discoverable because they were either "not part of the investigation, or the potential implied waiver here, or they are irrelevant and/or not proportional to the needs of the case." (*1/17/20 Hearing Transcript* [Doc. 78] 9:19-10:1.)

Bay Club has provided no evidence contradicting Liem's assertion that she conducted a quick review of the text messages. Bay Club's attorney Allen states that

7

during "a morning break in the deposition proceedings, I witnessed Ms. Liem reviewing the privileged communications." (*Allen Decl.* [Doc. 66-2] ¶ 12.) He does not provide an estimate for how long Liem reviewed the documents, does not assert that she looked at the documents after the morning break, or provide any other information that is inconsistent with Liem's contention that her review was quick.

Bay Club nevertheless asserts that the EEOC must have reviewed the documents more thoroughly later because the EEOC referenced the contents of the text messages in attorney Nardecchia's December 11, 2019 letter to Bay Club. (*P&A* [Doc. 66-1] 112:3–7, citing *Allen Decl.* [Doc. 66-2], Ex. 7.) But Bay Club fails to identify what information in the correspondence was purportedly taken from the text messages or to dispute the EEOC's argument that all correspondence between the EEOC and Bay Club referred to Gonser's deposition testimony, not the messages' contents. (See, e.g., *Opp'n* [Doc. 72-6] Ex.4.)

Bay Club also cites a number of cases that it contends require Liem's disqualification. Those cases are easily distinguishable. In Rico, 42 Cal. 4th 807, after counsel realized the document was privileged, the attorney disseminated the document to experts and other attorneys, and used the document to depose defendant's expert. Id. at 1095. In Bona Fide, 2016 WL 4361808, the court disqualified an attorney who, for over two years, retained and transcribed recordings that included attorney-client information, and used the information to craft his client's claims against the defendant. Id. at *11. Even more alarming, the attorney's conduct continued after a court in a separate proceeding expressed concerns about the recordings. Id. In U.S. ex rel. Hartpence, 2013 WL 2278122, the relator's counsel was notified in 2008 by the U.S. Attorney's Office that the documents appeared to include privileged information, yet the attorney continued to use the documents in pleadings for approximately three more years. Id. at *2, 3. Finally in Gotham, 2014 WL 1025120, the disqualified attorney used the privileged documents to develop his clients' claims against the defendant in the case. Id. at *3.

8

Unlike the cases Bay Club cites, the evidence demonstrates that after Liem conducted a quick review of the documents, they were sealed pending resolution of the privilege issue by Judge Schopler.  Aside from Bay Club's allegations in its motion, there is no evidence that Liem or the EEOC continued to review the documents after they were sealed, or that the EEOC has used the documents in the litigation.  Moreover, Bay Club has not argued prejudice as a result of Liem's review.  Under these circumstances, the Court finds Liem did not review the messages further than absolutely necessary to discover the alleged privilege.

### IV.    CONCLUSION & ORDER

Under the circumstances, the Court finds the text messages produced at Gonser's deposition were not obviously covered by the attorney-client privilege, and that Gonser's quick review of the documents was not greater than necessary.  Accordingly, Bay Club's motion to disqualify Liem is **DENIED** [Doc. 66].

However, Judge Schopler has clarified the limited extent to which Bay Club has waived the privilege concerning Koorenny's communications regarding the subject investigation.  The waiver is not as broad as Liem asserted at Gonser's deposition.  Thus, the EEOC is cautioned that future disputes regarding the application of the attorney-client privilege to Koorenny's communications should be resolved before the EEOC reviews the communications.

**IT IS SO ORDERED.**

Dated:  July 21, 2020

_____
Hon. Thomas J. Whelan
United States District Judge