1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

                                    Plaintiff,

v.

BAY CLUB FAIRBANKS RANCH, LLC
d/b/a FAIRBANKS RANCH COUNTRY
CLUB; FAIRBANKS RANCH
COUNTRY CLUB, INC.,

                                    Defendants.

Case No.:  3:18-CV-1853 W (AGS)

**ORDER DENYING SIDNEY
SCOTT'S MOTION TO INTERVENE
OR, ALTERNATIVELY, FOR
MEDIATION [DOC. 120]**

        Charging Party Sidney Scott, acting in pro per, has filed a motion to intervene or, alternatively, for mediation.  (*Mot. Intervene* [Doc. 120].)  Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") and Defendants The Bay Clubs Company, LLC, and Bay Clubs Fairbanks Ranch, LLC oppose.  (*EEOC Opp'n* [Doc. 131]; *Defs' Opp'n* [Doc. 132].)

        The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d.1).  For the following reasons, the Court **DENIES** the motion [Doc. 120].

1

# I.    INTRODUCTION

This lawsuit stems from a charge of discrimination filed by Charging Party Sidney Scott in August 2016.  After investigating her charge and efforts at conciliation failed, on August 8, 2018, Plaintiff EEOC filed this lawsuit to "correct unlawful employment practices based on sex and to provide relief to Charging Party Sidney Scott ... and a class of individuals ... who were adversely affected by such practices."  (*Comp*. [Doc. 1] 1:26–28.)  The Complaint alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII") by unlawfully subjecting Scott and the class of similarly aggrieved individuals (collectively, the "Claimants") to sexual harassment, including a hostile work environment and quid pro quo harassment, because of their sex (female).  (*Id.* 2:6–10.)  The Complaint further alleged Defendants violated Title VII by unlawfully subjecting some Claimants to constructive discharge and retaliation.  (*Id.* 2:10–13.)

The employment practices at issue occurred at the Fairbanks Ranch Country Club facility, located in Rancho Santa Fe, California.  (*Compl.* ¶ 2.)  The original Complaint named Defendants Fairbanks Ranch Country Club, Inc. ("Fairbanks Ranch"), which operated the facility before July 2016, and Bay Club Fairbanks Ranch, LLC ("Bay Club"), which acquired the facility in approximately July 2016.  (*Id.* ¶¶ 4, 5.)  The EEOC subsequently filed a First Amended Complaint to add The Bay Clubs Company, LLC ("TBCC"), which owns Defendant Bay Club and owns or operates at least 20 other premier resort-style facilities/clubs.  (*FAC* [Doc. 99] ¶¶ 9, 12.)

On February 10, 2021, the parties filed a joint motion to approve a consent decree, which would resolve this litigation.  (*See Jt. Mot. Approve Consent Decree* [Doc. 118].)  The same day, Scott filed the pending motion to intervene.  (*See Mot. Intervene* [Doc. 120].)

Scott seeks to intervene because she contends the EEOC "committed fraud upon the Court by prosecuting and portraying a narrative that is false" because "[i]mportant aspects of the complaint that Charging Party, Sidney Scott made were omitted from litigation."  (*Scott Reply* [Doc. 141] p. 5.)  The "important aspects" omitted from the

litigation involve her allegations that she was also subjected to racial discrimination, paid the least amount of the employees, forced to drink alcohol as an "underage" as part of her job, and sexually attacked and harassed by the general manager.  (*Id.* pp. 5–6.)  Scott also seeks to prevent the EEOC from paying her less than 60% of any monetary compensation from the pending settlement (*Mot. Intervene* [Doc. 120] pp. 6–7), and belatedly raises "concerns" with a Consent Decree approved on December 2, 2019.  (*Scott Reply* [Doc. 141] p. 10).

As discussed below, the evidence establishes Scott either knew or should have known by no later than the Fall of 2019 that the EEOC omitted the "important aspects" of her claim from this lawsuit.  Moreover, given the significant amount of litigation that has occurred, allowing Scott to intervene after the parties have agreed to settle the case would prejudice the current parties, dismissed Defendant Fairbanks Ranch and potentially other Claimants.  Accordingly, Scott's motion will be denied.

### A.   In August 2016, Scott files a charge of discrimination.

In August 2016, Charging Party Scott filed a charge of discrimination with the EEOC and the State of California.  (*Scott Reply* [Doc. 141] p. 6; *EEOC Ex. 4* [Doc. 131-7] p. 1.[1])  On October 6, 2016, the Department of Fair Employment and Housing ("DFEH") issued a Right to Sue Notice to Scott, confirming the notice "allows you to file a private lawsuit in State Court."  (*EEOC Ex. 4* [Doc. 131-7] p. 1.[2])

On March 9, 2018, the EEOC issued its Determination regarding Scott's charge of discrimination.  (*EEOC Ex. 12* [Doc. 131-13].)  The letter notified Scott that the EEOC's investigation found "reasonable cause to believe that Charging Party was subjected to a

---

[1] The EEOC's exhibits filed in support of its opposition are attached to the EEOC's Appendix to Exhibits [Doc. 131-4].

[2] Scott contends she filed a complaint the Employment Development Department, not DFEH, and contends she "has not seen or been presented with" a right to sue letter.  (*Scott Aff.* [Doc. 141] ¶¶ 4–6.)

sexually hostile work environment because of her sex (female), retaliation, and constructively discharged, in violation of Title VII." (*Id.* p. 1.) It also notified Scott that "the [EEOC] has determined that there is reasonable cause to believe that a class of employees have been subjected to sexual harassment because of their sex (female), retaliation, and constructively discharged, in violation of Title VII." (*Id.*) The letter advised Scott that she would be contacted "in the near future to begin the conciliation process" and explained that when "the Respondent declines to enter into settlement discussions, or when the Commission's representative for any other reason is unable to secure a settlement acceptable to the Office Director, the Director shall inform the parties in writing." (*Id.* p. 2.) The letter omitted any reference to Scott's claims of racial discrimination or being forced to consume alcohol as an "underage" while working.

On June 29, 2018, the EEOC sent Scott a Notice of Conciliation Failure. (*EEOC Ex. 13* [Doc. 131-14] p. 1.) In addition to notifying her that "efforts to conciliate" were unsuccessful, the letter informed Scott that the case was referred to the EEOC's Legal Unit for possible litigation. (*Id.*) If the EEOC decided not to file a lawsuit, Scott was advised that she "will be issued a Notice of Right to Sue," entitling her "to sue the Respondent on her own behalf." (*Id.*)

On July 10, 2018, EEOC attorney Natalie Nardecchia contacted Scott and informed her the EEOC would be filing suit. (*Nardecchia Decl.* [Doc. 131-2] ¶ 2.[3])

**B.      The EEOC files this lawsuit and Scott agrees to be the Charging Party.**

On August 8, 2018, the EEOC filed this lawsuit. (*See Comp.* [Doc. 1].) Approximately three weeks later, Attorney Nardecchia met with Scott to review the litigation. (*Scott Reply* [Doc. 141] p. 6; *Nardecchia Decl.* [Doc. 131-2] ¶ 3.) According to Attorney Nardecchia, among the things discussed was "the fact that this is a class case

---

[3] Scott disputes talking to Attorney Nardecchia. (*Scott Aff.* [Doc. 141] ¶ 13.)

and the EEOC, as plaintiff, would be seeking relief for all victims of harassment, including but not limited to Ms. Scott." (*Nardecchia Decl.* [Doc. 131-2] ¶ 3.)

On September 21, 2018, Attorney Nardecchia sent Scott a follow-up letter that reiterated the "lawsuit seeks relief for you as charging party and class members subjected to sexual harassment." (*EEOC Ex. 5* [Doc. 131-8] p. 1.)  The letter also stated:

> Based on our conversations, you have agreed to participate as the charging party for whom the EEOC seeks relief. As the plaintiff in this lawsuit, the EEOC will be representing your interests. **The EEOC has final say as to how to conduct the litigation and how and whether to resolve the case through settlemen**t, though the EEOC will, of course, consider what you think is a fair resolution. **You have the right to intervene as a separate party in this lawsuit and hire your own separate attorney to decide how to resolve your individual claim** which may include additional claims under state law, but you are not required to hire your own attorney.

(*Id.*, emphasis added.[4])

On July 31, 2019, EEOC attorney Connie Liem sent Scott an email notifying her the EEOC had settled with Defendant Fairbanks Ranch.  (*EEOC Ex. 2* [Doc. 131-6] p.1.) The email reminded Scott that "the EEOC litigates in the public interest to eliminate employment discrimination and seek relief for victims of discrimination.  The EEOC filed this instant class action lawsuit on behalf of **you, a class of other similarly-situated individuals, and the public interest.**" (*Id.*, emphasis added.)  Scott was also advised that "[i]n addition to you, three other female claimants/class members have come forward alleging that they were also subjected to sexual harassment while employed at Fairbanks Ranch." (*Id.*)

On August 2, 2019, Attorney Liem sent Scott a letter confirming the information in the July 31, 2019 email.  (*EEOC Ex. 6* [Doc. 131-9] p. 1.)  Eleven days later, the EEOC met with Scott regarding the Fairbanks Ranch settlement.  (*Liem Decl.* [Doc. 131-3] ¶ 4;

---

[4] Scott states she "has never seen or been presented with a right to intervene letter as alleged." (*Scott Aff.* [Doc. 141] ¶ 19.)

*Park Decl.* [Doc. 131-1] ¶ 4.)  During the meeting, the EEOC again informed Scott that it was litigating on behalf of the public interest and was seeking class relief.  (*Id*.)

### C.   The Court approves the Fairbanks Ranch Consent Decree and a year later the EEOC and remaining Defendants file a notice of settlement.

On or about November 19, 2019, the EEOC and Defendant Fairbanks Ranch filed a notice of settlement and motion to approve a consent decree.  (*Jt. Mot. to Approve Fairbanks Ranch Consent Decree* [Doc. 62].)  On November 27, 2019, this Court granted the joint motion and approved the consent decree.  (*Fairbanks Ranch Consent Decree* [Doc. 64].)  Under the terms of the settlement, Fairbanks Ranch agreed to pay $125,000 in monetary compensation.  (*Id.*)

According to Scott, initially she was to receive $50,000 of the settlement proceeds. (*Scott Reply* [Doc. 141] p. 10.)  Unhappy with her allocation, Scott contacted EEOC Regional Attorney Anna Park, and a conference call was scheduled for December 12, 2019.  (*Id.* p. 11.)  During the call, Scott "explained her concerns" and the EEOC attorneys reiterated the lawsuit was brought on behalf of the public and sought class relief.  (*Id.*; *Liem Decl.* [Doc. 131-3] ¶ 4; *Park Decl.* [Doc. 131-1] ¶ 4.)  "Subsequently," Scott negotiated "a settlement of sixty percent ($75,000) … with the promise of receiving a lot more to keep 'the girls engaged.'"  (*Scott Reply* [Doc. 141] p. 11.)

In February 2020, the EEOC invited Scott to participate in an upcoming mediation with Bay Club.  (*Liem Decl.* [Doc. 131-3] ¶ 6.)  Scott declined to attend.  (*Id.*)

On March 4, 2020, the parties participated in a full-day private mediation with the Honorable Leo S. Papas, U.S. Magistrate Judge (Ret.).  (*Jt. Notice Settle.* [Doc. 113] 1:6– 7.)  After the mediation, the parties continued to engage in settlement discussions, and on October 13, 2020, filed a notice of settlement with all parties.  (*Id.*)

In December 2020, Scott was informed that a settlement had been reached.  (*Scott Reply* [Doc. 141] pp. 12–13.)  On December 28, 2020, Scott sent an email to EEOC Regional Attorney Park (copied to Attorney Liem) regarding concerns she had with the

case and Attorney Liem.  (*Scott Reply* [Doc. 141] Ex. A.)  In the email, Scott took issue with Attorney Liem's statement that Scott should not receive 60% of the settlement allocation and asserted as "a charging party, I am claiming no less than the agreed-upon 60 percent of the total settlement amount as I did in the initial settlement with Fairbanks Ranch, including back pay, compensatory damages, and punitive damages."  (*Id.*)

On January 14, 2021, a conference call was scheduled between Scott, her parents and Attorney Park.  (*Scott Reply* [Doc. 141] p. 13; *Park Decl.* [Doc. 131-1] ¶ 5.)  During the call, Scott raised concerns regarding "the relevant details of the case and the settlement information" and "the continuation of 60% in the upcoming final settlement." (*Scott Reply* [Doc. 141] p. 13.)  At that time, Scott was advised there were 20 more Claimants.  (*Id.*)  Attorney Park also stated that Scott's prior settlement of $75,000 would be deducted from the current settlement.  (*Id.*)  After the meeting, Park sent Scott a letter memorializing the meeting.  (*Park Decl.* [Doc. 131-1] ¶ 5.)

On February 10, 2021, the EEOC, TBCC and Bay Club filed a Joint Motion to Approve Consent Decree and Order.  (*See Jt. Motion Approve Consent Decree* [Doc. 118].)  The same day, Scott filed the pending motion to intervene.  In the moving papers, Scott asserts she "recently learned (her) interest will not be protected in this action" and appears to request the EEOC be estopped from reneging on its alleged earlier "promise" that she receive 60% of the settlement.  (*Mot. Intervene* [Doc. 120] pp. 2, 4, 6–7.)  In her reply, Scott justifies her delay in moving to intervene by asserting she only recently discovered the EEOC omitted "important aspects" of her administrative complaint from this lawsuit and only recently was informed of her right to intervene.  (*Scott Reply* [Doc. 141] p. 5.)

## II.   LEGAL STANDARD

"Intervention is governed by Fed.R.Civ.P. 24, which permits two types of intervention: intervention as of right and permissive intervention."  Nw. Forest Res.

Council v. Glickman, 82 F.3d 825, 836 (9th Cir. 1996).  The Ninth Circuit applies a four-prong test in evaluating intervention as of right:

> (1) the application for intervention must be timely; (2) the applicant must have a 'significant protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 817–18 (9th Cir. 2001).  For permissive intervention, the proposed intervenor must demonstrate: (1) the motion is timely; (2) there is an independent basis for jurisdiction; and (3) the intervenor's claim or defense shares a question of law or fact with the main action.  League of United Latin American Citizens v. Wilson, 131 F.3d 1297, 1308 (9th Cir. 1996).

Timeliness is a threshold requirement for intervention as of right and permissive.  United States v. Washington, 86 F.32d 1499, 1503, 1507 (9th Cir. 1996).  "In other words, if we find 'that the motion to intervene was not timely, [we] need not reach any of the remaining elements of Rule 24.'"  Wilson, 131 F.3d at 1302 (quoting Washington, 86 F.3d at 1503).  Courts in the Ninth Circuit "must bear in mind" that "any substantial lapse of time weighs heavily against intervention."  Id.

The proposed intervenor "bears the burden of showing that all the requirements for intervention have been met."  United States v. Alisal Water Corp., 370 F.3d 915, 919 (9th Cir, 2004).  However, courts generally construe the requirements broadly in favor of intervention.  United States v. City of L.A., 288 F.3d 391, 397-98 (9th Cir. 2002); Lee v. Pep Boys-Manny Moe & Jack of California, 2016 WL 324015, *2 (N.D. Cal. 2016) ("For both as-of-right and permissive intervention, courts generally construe Rule 24 liberally in favor of intervention.").

Though Title VII expressly provides an aggrieved employee with a right to intervene, the intervention request must still be timely.  See 42 U.S.C. § 2000e-5(f)(1).

### III.   ANALYSIS

#### A.   Timeliness

The Ninth Circuit considers three criteria in determining whether a motion to intervene is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and the length of the delay." Wilson, 131 F.3d at 1302 (citing County of Orange v. Air California, 799 F.2d 535, 537 (9th Cir. 1986)).  "In considering these factors, however, we must bear in mind that 'any substantial lapse of time weighs heavily against intervention.'" Id. (citing Washington, 86 F.3d at 1503).  Because timeliness is the threshold requirement, the court need not reach any other issue if it finds the motion was not timely.  Wilson, 131 F.3d at 1302.

#### 1.   Stage of the proceeding.

Scott could not be seeking to intervene at a later stage in the litigation.  The lawsuit was filed in August 2018.  Since then, the parties have vigorously litigated the matter and are on the eve of settlement.

The lawsuit has been vigorously contested by both sides.  Immediately after being served with the Complaint, Defendant Bay Club filed a motion to dismiss, challenging subject matter jurisdiction and arguing the EEOC failed to state a claim for harassment, retaliation and constructive discharge.  (*Notice of MTD* [Doc. 7] 2:7–13.)  The parties have also filed motions to disqualify each other's attorneys [Docs. 40, 66] and, based on information obtained during discovery, the EEOC eventually filed the motion to amend the complaint [Doc. 91] to add TBCC to the litigation.

The parties have also expended significant resources and time in aggressively pursuing and opposing discovery.  This is reflected by the parties' motions to compel production of documents [Docs. 38, 56], motion for sanctions [Doc. 56] and motion to quash [Doc. 70].  The parties' aggressive discovery efforts are also reflected in the numerous discovery-dispute hearings in front of Magistrate Judge Schopler on July 18,

2019 [Doc. 35], August 8, 2019 [Doc. 43], September 4, 2019 [Doc. 50], December 18, 2019 [Doc. 67], January 15, 2020 [Doc. 73], January 17, 2020 [Doc. 79], January 30, 2020 [Doc. 88], February 13, 2020 [Doc. 92], and September 22, 2020 [Doc. 110].

In addition to their efforts in litigating and conducting discovery regarding the issues raised in the EEOC's complaints, the parties have also spent a considerable amount of time negotiating a resolution of this case.  The Fairbanks Ranch Consent Decree not only resulted in $125,000 in monetary relief for the Claimants, but in significant injunctive relief.  (*Fairbanks Consent Decree* [Doc. 64] §§ VII.A–B, IX–X.)  The proposed consent decree filed by the remaining parties and now pending would resolve the remaining claims, and is the result of the parties' participation in a March 2020 private mediation before the Honorable Leo S. Papas, U.S. Magistrate Judge (Ret.), and continued negotiations until approximately October 2020.  (*Jt. Notice Settle.* [Doc. 113] 3:6–10.)

In short, the record confirms that by the time Scott filed her motion, "a lot of water had already passed underneath [this] litigation bridge."  Wilson, 131 F.3d at 1303. Accordingly, the Court finds this factor weighs heavily in favor of finding Scott's motion to intervene is untimely.

### 2.     Prejudice to the parties.

The Ninth Circuit has held that "prejudice to existing parties is 'the most important consideration in deciding whether a motion for intervention is untimely.'  [Citation omitted.]"  Smith v. Los Angeles Unified Sch. Dist., 830 F.3d 843, 857 (9th Cir. 2016).

Here, Scott contends she should be allowed to intervene because the EEOC omitted from this lawsuit her claims regarding racial discrimination, being forced to drink alcohol as an "underage," and being sexually attacked and harassed by the general manager. (*Scott Reply* [Doc. 141] pp. 5–6.)  She also raises "concerns" with the Fairbanks Ranch Consent Decree.  (*Id.* pp. 10–11.)  Accordingly, if allowed to intervene, Scott would seek

to litigate the issues the EEOC omitted from the case (*id.* pp. 18, 23–25) and object to the Fairbanks Ranch Consent Decree (*Mot. Intervene* [Doc. 120] pp. 6–7).

The EEOC contends allowing Scott to intervene would prejudice the current parties, Fairbanks Ranch, and the other Claimants.  (*EEOC Opp'n* [Doc. 131] 11:18–12:24.)  The Court agrees with the EEOC.

"[A]s a general rule, intervenors are permitted to litigate fully once admitted to a suit." Wilson, 131 F.3d at 1304.  The "inevitable effect" is "prolonging of the litigation to some degree." Id.

Here, allowing Scott to intervene in order to raise new claims would require reopening discovery, and prolong a case that has been litigated since 2018 and is on the verge of settlement.  Not only would the parties be required to expend additional time and resources to reengage in discovery and potentially motion practice, but the time and resources spent mediating the case before Judge Papas and negotiating a potential resolution would effectively be nullified.  In short, allowing Scott to intervene would prejudice the parties.

In addition to the parties, Scott's intervention would delay the ability of the other victims of sexual harassment—on whose behalf this lawsuit was brought—to receive compensation for their injuries.  Thus, Scott's intervention would prejudice the other Claimants.

Finally, allowing Scott to intervene in order to object to the Fairbanks Ranch Consent Decree would prejudice Defendant Fairbanks Ranch, who has already been dismissed and ceased litigating.  Moreover, the other Claimants who received monetary compensation from the settlement in approximately December 2019 could also suffer prejudice.

For all these reasons, the Court finds this factor weighs heavily in favor of finding Scott's motion to intervene is untimely.  See Aleut Corp. v. Tyonek Native Corp., 725 F.2d 527, 530 (9th Cir. 1984) (affirming district court's finding of prejudice where intervention sought "on the eve of settlement following several years of litigation.").

1

### 3.    Reason for and length of delay.

A party "seeking to intervene must act as soon as he 'knows or has reason to know that his interests might be adversely affected by the outcome of the litigation.'" Lee, 2016 WL 324015, *7 (quoting Peruta v. City of San Diego, 771 F.3d 570, 572 (9th Cir. 2014). "Delay is measured from the date the proposed **intervenor should have been aware** that its interests would no longer be protected adequately by the parties, not the date it learned of the litigation." Id. (quoting Washington, 86 F.3d at 1503) (emphasis added).

Here, Scott contends she moved to intervene as soon as she learned the EEOC did not represent her interests.  (*Scott Reply* [Doc. 141] p. 24.)  According to Scott, the EEOC does not represent her interests because it is "prosecuting and portraying a [false] narrative" by omitting "important aspects" of her administrative claim from this case, such as the racial discrimination she endured.  (*Id.* pp. 5–6, 18, 23–24.)  Scott's argument is unpersuasive for a number of reasons.

Even before the lawsuit was filed, Scott knew or should have known the EEOC was not pursuing the "important aspects" of her administrative complaint.  On March 9, 2018, the EEOC issued its Determination regarding the merits of her administrative complaint.  The letter stated:

> Charging Party alleges she was subjected to a sexually hostile work environment because of her sex (female) and intimidated in retaliation for turning down her supervisor's sexual advances, resulting in her constructive discharge, in violation of Title VII.
>
> Respondent denies Charging Party's allegations.
>
> The [EEOC] finds there is reasonable cause to believe that Charging Party was subjected to a sexually hostile work environment because of her sex (female), retaliation, and constructively discharged, in violation of Title VII.
>
> As a like and related issue, the [EEOC] has determined that there is reasonable cause to believe that a class of employees have been subjected to

sexual harassment because of their sex (female), retaliation, and constructively discharged, in violation of Title VII.

(*EEOC Ex. 12* [Doc. 131-13] p. 1.[5])  Because the letter does not mention racial discrimination or any of the other "important aspects" Scott alleges were raised in her administrative claim, she knew or should have known the EEOC was only pursing the sexual harassment claim.

In addition to the EEOC's Determination letter, the Complaint has been on the public docket since this lawsuit was filed in August 2018 (*Compl.* [Doc. 1]) and the First Amended Complaint has been on the docket since August 5, 2020 (*FAC* [Doc. 99]). Aside from the addition of Defendant TBCC in the First Amended Complaint, the causes of action have not changed and focus solely on sexual harassment, not racial discrimination or any of the other "important aspects" of her administrative complaint. (*See id.*)  Thus, the complaints also should have alerted Scott that the EEOC was purportedly not representing her interests in the case.

The Court recognizes Scott contends she was unaware of this lawsuit until July 31, 2019—a year after the lawsuit was filed—when she was subpoenaed for her deposition. (*Scott Reply* [Doc. 141] p.6.)  Assuming for the sake of argument that her contention was credible, it would only justify her failure to file the motion until approximately August 2019.[6]  In other words, once she learned the lawsuit was filed, it was no longer

---

[5] While Scott alleges she did not receive other communications from the EEOC, she does not deny receiving the March 9, 2018 Determination. (*See Scott Affidavit* [Doc. 141].)

[6] Scott's contention that she was unaware of this lawsuit until approximately August of 2019 is difficult to reconcile with the evidence.  She admits that on or about June 29, 2018, the EEOC informed her that conciliation efforts failed.  (*Mot. Intervene* [Doc. 120] p. 5.)  The EEOC's Notice of Conciliation Failure specifically advised Scott that "the case has been referred to our Legal Unit for possible litigation," and stated if the EEOC decided not to file a lawsuit, she "will be issued a Notice of Right to Sue…." (*Id.*)  According to Attorney Nardecchia, on July 10, 2018, she informed Scott that the EEOC would be filing suit.  (*Nardecchia Decl.* [Doc. 131-2] ¶ 2.)  Then on August 31—approximately 3 weeks after the lawsuit was filed—Scott admits she met with Attorney Nardecchia in the EEOC's Los Angeles office. (*Scott Reply* [Doc. 141] p. 6.)  Though Scott alleges the meeting was only "for intake," Nardecchia

13

reasonable for her to assert she was not aware of the claims the EEOC was pursing on her behalf, as well as the other Claimants.  This is particularly true in light of her admission that during the August 2019 deposition, she testified "she did not trust the EEOC."  (*Scott Reply* [Doc 141] p. 9.)  Moreover, in November 2019—after Scott admittedly discovered the lawsuit was filed and testified that she did not trust the EEOC—this Court approved the Fairbanks Ranch Consent Decree, which again reiterated the claims the EEOC was pursing in this case:

> On August 8, 2018, EEOC filed this action in the United States District Court for the Southern District of California in *US. Equal Employment Opportunity Commission v. Bay Club Fairbanks Ranch, LLC d/b/a Fairbanks Ranch Country Club, Fairbanks Ranch Country Club, Inc., and Does 1-10*, inclusive, Case No. 18cvl853-W-AGS for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). The action alleges that Defendants violated Title VII by unlawfully subjecting Charging Party Sidney Scott and a class of similarly aggrieved individuals ("Claimants") **to sexual harassment, including a hostile work environment and quid pro quo harassment, because of their sex (female).** The action further alleges that Defendants violated Title VII **by unlawfully subjecting some Claimants to constructive discharge and retaliation.** FRCCI denies liability and contends that it did not violate the law because, at the time of all events alleged in the Complaint, it did not exercise control as an employer; both contractually and in fact, FRCCI was precluded by Defendant Bay Club from exercising any control over the workplace at Fairbanks Ranch Country Club after April 30, 2015.

---

declares they discussed the litigation.  (*Nardecchia Decl.* [Doc. 131-2] ¶ 3.)  Then on September 21, 2018, Attorney Nardecchia sent a follow-up letter confirming Scott agreed to participate as the charging party and advising her of the right to intervene.  (*EEOC Ex. 5* [Doc. 131-8] p. 1.)

While Scott denies receiving Nardecchia's July 10 and September 21 communications, it strains the imagination to believe Nardecchia never mentioned the lawsuit during the August 31 meeting. Moreover, even assuming Nardecchia somehow failed to mention the lawsuit, the EEOC's Notice of Conciliation Failure advised Scott that "**[i]f the EEOC decides that it will not bring a civil action**" she would receive a Notice of Right to Sue.  Scott admits she never received a Notice of Right to Sue from the EEOC.  (*Scott Affidavit* [Doc. 141] ¶ 6.)  Thus, she should have known the EEOC had filed suit at some point after meeting with EEOC Attorney Nardecchia.

(*Fairbanks Consent Decree* [Doc. 64] 2:7–20, emphasis added.)  In short, by no later than December 2019, Scott knew or should have known that "important aspects" of her claim were omitted from the litigation and, thus, her interests were allegedly not being represented by the EEOC.[7]

For all these reasons, the Court finds this factor weighs heavily in favor of finding Scott's motion to intervene was not timely.

## IV. CONCLUSION & ORDER

For the reasons set forth above, the Court find Scott's motion to intervene was not timely and, therefore, **DENIES** the motion in its entirety [Doc. 120].

**IT IS SO ORDERED.**

Dated:  March 19, 2021

Hon. Thomas J. Whelan
United States District Judge

---

[7] Scott also contends the EEOC did not tell her about the right to intervene until after December 18, 2020.  (*Scott Affidavit* [Doc. 141] ¶ 20.)  Her statement is contrary to the evidence.  On September 21, 2018, the EEOC sent Scott a letter following-up on their August 31, 2018 meeting.  (*EEOC Ex. 5* [Doc. 131-8] p.1.)  The letter explicitly advised Scott that "[y]ou have the right to intervene as a separate party in this lawsuit and hire your own separate attorney to decide how to resolve your individual claim…." (*Id.*)  Notably, the letter was mailed to the same address as the August 2, 2019 letter notifying her of the monetary settlement with Fairbanks Ranch, which Scott does not dispute receiving.  (*Compare EEOC Ex. 6* [Doc. 131-9] and *EEOC Ex. 5* [Doc. 131-8].)  Under the mailbox rule, the Court finds the EEOC notified Scott of her right to intervene in September 2018.  See Schikore v. BankAmerica Supplemental Retirement Plan, 269 F.3d 956, 961 (9th Cir. 2001) (explaining that the mailbox rule creates a "rebuttable presumption that the document has been received by the addressee in the usual time.")  Nevertheless, regardless of whether Scott was notified of her right to intervene in September 2018, for the reasons discussed in this section, the Court finds she should have known the EEOC allegedly did not represent her interests by December 2019.